UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-604-MLP <br><br> ORDER |

## I.  INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting (1) Plaintiff's testimony regarding psychogenic seizures and headaches, and (2) the opinions of examining psychologist Thomas Genthe, Ph.D. (Dkt. # 12.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.  BACKGROUND

Plaintiff was born in 1970, has at least a high school education, and has no past relevant work. AR at 26. Plaintiff was last gainfully employed in 2017. *Id.* at 18.

ORDER - 1

On July 13, 2018, Plaintiff applied for benefits, alleging disability as of September 1, 2017. AR at 15, 210-17. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 63-90, 93-124. After the ALJ conducted a hearing on June 30, 2020, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-27, 34-60. In relevant part, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the spine, non-epileptic seizure disorder, major depressive disorder, posttraumatic stress disorder ("PTSD"), and personality disorder. *Id.* at 18. The ALJ found Plaintiff had the residual functional capacity to perform light work with additional exertional, postural, manipulative, environmental, cognitive, social, and adaptive limitations. *Id.* at 20.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

ORDER - 2

Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Rejecting Plaintiff's Testimony

Plaintiff contends the ALJ erred by rejecting his testimony regarding the severity of his pseudoseizure and headache symptoms. Plaintiff testified he has pseudoseizures and headaches following a motor vehicle accident in August 2017. AR at 45-46, 235, 251, 267, 313. He testified he was having two to four seizures per day, which were brought on by stress, PTSD, and strenuous activity. *Id.* at 48, 251, 313. He testified he had constant headaches and neck pain. *Id.* at 51, 267. Plaintiff testified the neck pain restricted his range of motion and ability to lift or carry things, particularly after a seizure. *Id.* at 52-53, 240.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; she does not have to show the impairment could reasonably be expected to cause the severity of symptoms alleged. *Id.* The ALJ found Plaintiff met this step. AR at 21.

ORDER - 3

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Garrison*, 759 F.3d at 1014–15. The ALJ failed to meet this requirement.

The ALJ erred in rejecting Plaintiff's testimony regarding the severity of his headaches and pseudoseizures as inconsistent with the medical evidence. When evaluating medical evidence, an ALJ must present a rational and accurate interpretation of that evidence. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). Here, the ALJ cited to normal findings, but failed to acknowledge that either those findings were irrelevant to Plaintiff's actual claims, or that the same records contained findings supporting Plaintiff's claims. *See* AR at 21-23. For example, the ALJ noted an appointment where Plaintiff had normal motor strength and intact coordination, but failed to note that Plaintiff had pseudoseizures "every couple of minutes" during the appointment. *Id.* at 380; *see also, e.g.*, *id.* at 409, 487, 524-25, 554.

The ALJ also erred in rejecting Plaintiff's testimony based on improvement with treatment. "[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. The ALJ noted Plaintiff at times reported improved mental health symptoms with medication. *See* AR at 22. But, as the ALJ acknowledged, Plaintiff continued to have significant symptoms, including a suicide attempt. *See id.* at 494, 571, 677, 750-61, 863-64. The ALJ's finding of improvement to the point that it contradicted Plaintiff's testimony was thus not supported by substantial evidence.

ORDER - 4

        The ALJ next erred in rejecting Plaintiff's testimony as inconsistent with his activities of daily living. Claimants need not be "utterly incapacitated" to be disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The ALJ's finding that Plaintiff could perform his own personal care, "prepare simple meals, clean, do laundry, take out the garbage, and shop about once per week" therefore did not provide a clear and convincing reason to reject Plaintiff's testimony. *See* AR at 23.

        The ALJ last rejected Plaintiff's testimony based on evidence of malingering. But the evidence to which the ALJ referred did not support wholesale rejection of Plaintiff's testimony. The ALJ first pointed to statements from examining psychologist Dr. Genthe. AR at 24-25. Dr. Genthe stated he suspected "[a] high degree of impression management of mental health symptoms," and Plaintiff's "response patterns [were] reflective of inconsistent, and/or random reporting," such that his reports "may not be reflective of the nature, and/or degree of his actual mental health problems." *Id.* at 393. Dr. Genthe stated he was not diagnosing malingering, but felt it was possible Plaintiff was exaggerating his mental health problems. *Id.*

        Dr. Genthe's statements are sufficient for the ALJ to reject Plaintiff's testimony regarding the severity of his purely mental health symptoms, such as depression and PTSD. But Dr. Genthe's statements do not undermine Plaintiff's testimony regarding his headaches and pseudoseizures. The ALJ thus erred in rejecting those portions of Plaintiff's testimony.

        The ALJ next pointed to statements from emergency department doctor Robert Negron, M.D. AR at 25. Plaintiff was taken to the emergency department after a suicide attempt. *Id.* at

750-54. Dr. Negron, who saw Plaintiff several days after he first arrived at the hospital, felt there was a "malingering component to him." *Id.* at 750. Dr. Negron then stated: "[w]e did see some pseudoseizures on admission, but no actual pseudoseizures once we took him off the Keppra and put him on Depakote." *Id.* Given the admission that he observed pseudoseizures and they stopped after a medication change, it is unclear what malingering Dr. Negron was referring to.[1] Moreover, the record is rife with documentation from providers observing convulsive activity with no mention of exaggeration. *See, e.g., id.* at 380, 409-10, 428, 487, 524-25, 529, 554. Dr. Negron's statement thus did not provide substantial evidentiary support for a finding of malingering, and, in turn, for rejecting Plaintiff's overall testimony.

### B. The ALJ Erred in Rejecting Dr. Genthe's Opinions

Dr. Genthe examined Plaintiff on May 7, 2018. AR at 390-96. Dr. Genthe opined Plaintiff had marked limitations in a number of areas, including the ability to understand, remember, and persist in tasks by following detailed instructions, adapt to changes in a routine work setting, and communicate and perform effectively in a normal work setting, among other things. *Id.* at 392-93. The ALJ rejected Dr. Genthe's opinions because they were inconsistent with his own objective findings, and the overall medical evidence.[2] AR at 24.

Because Plaintiff filed his claim after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency

---

[1] Dr. Negron also stated he believed Plaintiff "might be here to avoid some legal responsibilities," and expressed some concern about Plaintiff's request for benzodiazepines. AR at 750. But Dr. Negron acknowledged Plaintiff was brought to the emergency department involuntarily, and had to be intubated. *Id.* at 750, 754. Dr. Negron's opinions here thus did not support any finding of malingering, as it is difficult to imagine one exaggerating when unconscious, regardless of his motivation.

[2] The ALJ did not reference Dr. Genthe's malingering discussion when rejecting his opinions. *See id.*

factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must remain legitimate. *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

The ALJ erred in rejecting Dr. Genthe's opinions. First, the ALJ failed to adequately explain how Dr. Genthe's own findings were inconsistent with his conclusions. The ALJ claimed Dr. Genthe found Plaintiff was cooperative, had normal thought processes and thought content, and had the ability to recall some items and spell a word forward and backward. AR at 24. But Dr. Genthe also noted Plaintiff was "[e]xtremely anxious," his thought processes were tangential, he had a poor understanding of the factors contributing to his difficulties, and he was only able to recall two of four objects after a five-minute delay. *Id.* at 395. The ALJ did not explain why the relatively normal findings he noted were more relevant to Dr. Genthe's conclusions than the abnormal findings Dr. Genthe documented. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretation and explain why they, rather than the doctors', are correct."). The ALJ thus erred.

Second, the ALJ erred in finding Dr. Genthe's opinions were inconsistent with the overall medical evidence. Much like he did when comparing Dr. Genthe's opinions and exam findings, the ALJ noted normal findings while ignoring abnormal findings. For example, the ALJ cited to an appointment in September 2018 where Plaintiff was found to be cooperative and had normal appearance, normal memory, and fair insight. AR at 24, 571-72. But the ALJ failed to note Plaintiff was also "domineering," had a depressed mood, labile, exaggerated affect range, tangential thought process, and "severe" judgment impairment. *Id.* at 571-72; *see also, e.g., id.* at

ORDER - 7

677, 703. The ALJ's reasoning was not supported by substantial evidence, and he therefore erred in rejecting Dr. Genthe's opinions.

### C. Scope of Remand

Plaintiff asks the Court to remand this matter for further administrative proceedings. Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)). The Court agrees remand for further proceedings is the appropriate remedy here.

On remand, the ALJ shall reevaluate Plaintiff's testimony regarding his headaches and pseudoseizures, and Dr. Genthe's opinions. The ALJ shall reassess Plaintiff's residual functional capacity, and all relevant steps of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this Order.

### V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 10th day of January, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 8